SMITH PATTEN
SPENCER F. SMITH, ESQ. (SBN: 236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for Plaintiff
PAUL LINDER

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL LINDER, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>GOLDEN GATE BRIDGE, HIGHWAY & TRANSPORTATION DISTRICT, a Special District; LISA LOCATI individually and as Bridge Captain of the District, and and DOES 1 to 10.<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br> **(1) RETALIATION IN VIOLATION OF CAL. LAB. CODE § 1102.5(b)**<br><br> **(2) VIOLATION OF CONSTITUTIONAL RIGHTS (FIRST AMENDMENT; 42 U.S.C. § 1983)**<br><br> **(3) VIOLATION OF CONSTITUTIONAL RIGHTS (FIFTH AND FOURTEENTH AMENDMENTS; 42 U.S.C. § 1983)**<br><br> **(4) VIOLATION OF THE BANE ACT (Cal. Civ. Code, § 52.1)**<br><br> **(5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff PAUL LINDER ("Plaintiff" or "Mr. Linder") brings this Complaint against

Defendant GOLDEN GATE BRIDGE, HIGHWAY & TRANSPORTATION DISTRICT

("Defendant" or "Golden Gate" or "the District"), a Special District, LISA LOCATI individually

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and as Bridge Captain of the District, and unnamed DOES 1-10.  This Complaint is brought for a pattern and practice of retaliation Plaintiff suffered in violation of 42 U.S.C. §1983, Cal. Lab. Code § 1102.5(b), Cal. Gov. Code, § 12653, Cal. Civ. Code, § 52.1, and Cal. Lab. Code § 1102.5(b).  The retaliation set forth below was defined by several instances of unfair adverse employment actions taken against Plaintiff that culminated in his unlawful termination.

## JURISDICTION AND VENUE

1.      This action is authorized by 42 U.S.C. §1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States.

2.      This Court has jurisdiction under 28 U.S.C. §1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. §1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. §1343(4), providing for the protection of civil rights. This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in the Northern District of California in that the wrongs alleged herein occurred within the Northern District of California.

4.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under 42 U.S.C. § 1983.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related state law claims because they arise out of the same transactions and occurrences.

5.      Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

///

///

2

**PARTIES**

6.      Plaintiff PAUL LINDER was at all relevant times unless otherwise set forth herein employed by Defendant District in the capacity of Bridge Lieutenant as a public officer.

7.      Defendant Golden Gate is a duly constituted Special District located in San Francisco, CA, created under the authority of Cal. Sts. & Hy. Code § 27000, *et seq.*, operating under the laws of the State of California, wholly situated in the Northern District of California.  At all times relevant herein for all purposes connected with the management of employment relations matters within the District, the District delegated its final policy-making authority to the Defendants. The District adopted and ratified each of their decisions as alleged herein as its own policies, customs, practices or decisions, as if the same had been promulgated directly by the District.

8.      Defendant Golden Gate is a public agency rather than a state agency, therefore it is not subject to the Eleventh Amendment's preclusion of suits against the state or its officials in most circumstances. (*Mt. Healthy City Board of Ed. v. Doyle* (1977) 429 U.S. 274, 280 [50 L.Ed.2d 471, 479-480, 97 S.Ct. 568].)

9.      Defendant Golden Gate, as a local governing agency or body, may be sued for damages under 42 U.S.C. § 1983 for any unconstitutional policies, ordinances, or regulations.  (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018].)

///

///

///

///

3

10.     Defendant LISA LOCATI was at all times relevant Bridge Captain for the District. Locati is sued individually and in her capacity as Bridge Captain for the District. In doing the things alleged herein, Locati acted under color of state law, within the course and scope of her employment, and as an official policy-maker for the District.  As a highest-ranking officer and supervisor, Locati was vested with policy-making authority over disciplinary and other actions such as the ones at issue in this complaint.

11.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-10, inclusive, and Plaintiff therefore sues such Defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences, acts, and omissions alleged herein and that Plaintiff's injuries as alleged herein were proximately caused by such aforementioned Defendants.

12.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein, each of the Defendants was acting as the partner, agent, servant, and employee of each remaining Defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining Defendants, and that each Defendant is responsible for the occurrences, acts, and omissions of each other Defendant complained of herein.

### FACTS COMMON TO ALL CLAIMS

13.     On September 13, 1991, Mr. Linder began employment with Golden Gate following a rigorous and very selective application process.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

14.     During his first nearly 21 years with Golden Gate, Mr. Linder had no history of discipline in his employment record.  Moreover, he received no less than five (5) commendation letters during this time period for exceptional service and professionalism, including one from former California State Assemblyman William T. Bagley.

15.     From 2004-06, Mr. Linder served as Assistant Rangemaster, assisting in the training and (re-)certification of Golden Gate personnel in the use of firearms.  From 2006 until January 31, 2012, he served as Rangemaster along with others, including Robert Gelardi ("Mr. Gelardi") and Robert Smith ("Mr. Smith").

16.     In 2009, Captain Lisa Locati ("Captain Locati") succeeded her husband, Michael Locati ("Mr. Locati"), as Bridge Captain.

17.     In January or February 2012, Golden Gate removed Mr. Linder as Rangemaster and replaced him with Bridge Lieutenant David Rivera ("Lieutenant Rivera").

18.     On April 30, 2012, Captain Locati informed Mr. Linder that he would be interviewed by an outside attorney-investigator, Lee Ann Wallace ("Ms. Wallace").

19.     In June/July 2012, Mr. Linder testified to Ms. Wallace as part of an investigation resulting from complaints by the Patrol Officer's union concerning weapons permitting and licensing improprieties at Golden Gate, including renewals, re-qualifications, and non-compliance with applicable regulations was presented to the District.

20.     Specifically, Mr. Linder's testimony resulted in actions by the District which became the subject of a BSIS/DOJ investigation. In this investigation Mr. Linder cooperated fully in this protected act.  BSIS investigators discovered that Golden Gate had paid its retired former employee, Terry Berardino ("Mr. Berardino"), to sign off on BSIS firearms certifications for Golden Gate, even though he neither witnessed nor knew of any range qualifications.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

21.     Mr. Linder also revealed that Mr. Locati misrepresented Mr. Berardino's date of retirement to the BSIS to cover the fact that Golden Gate did not have an active Rangemaster from March 2003 until 2004.

22.     As a result of the investigation by BSIS and CDOJ, BSIS revoked Golden Gate's multiple Rangemaster permits and Training Facility permit, causing Golden Gate's personnel to utilize private range services to qualify, re-qualify, and comply with applicable regulations concerning their firearms.  This revocation was a serious blow to the reputation of Golden Gate.

23.     Mr. Linder's truthful testimony was a central cause of BSIS's decision to revoke Golden Gate's range permit.

24.     On July 9, 2012, Captain Locati, Investigator Susan Spencer ("Ms. Spencer"), and Bridge Manager Kary Witt ("Ms. Witt") summoned Mr. Linder to a meeting, at which they served him, without warning, a letter of intent to terminate his employment based on two (2) allegedly incorrect dates on BSIS renewal documentation.  No documentation of the allegedly incorrect dates was provided.  No witnesses, legal counsel, or recordings were permitted in the meeting.

25.     At the meeting, Captain Locati would not permit discussion of improper BSIS certifications, permit issues, or her own conduct towards Mr. Linder.  If she had, it would have been revealed that Lieutenant Rivera continued to process range permits in a manner consistent with the errors and allegations to which Mr. Linder truthfully testified.

26.     After the meeting, Mr. Linder was unprecedently placed on unpaid leave and escorted from the premises by armed personnel, whereupon he was told that he would be arrested for trespassing if he returned.  Golden Gate also confiscated his keys and removed his duty firearm from his locker without any chain of custody.

27.     In August 2012, while Mr. Linder remained on unpaid leave, an investigator retained by Mr. Linder's former counsel, provided proof to Golden Gate that Mr. Linder had acted consistently with the District's policies and procedures that were in place prior to August 2012, and which continued thereafter.

28.     On September 16, 2012, Mr. Linder's termination was overturned.  Two days prior to his return to Golden Gate, however, he met with Captain Locati, Ms. Spencer, and Ms. Witt, who required him to submit his CDOJ assault weapon permit before he returned, even though it was already in management's possession.

29.     Upon his return from unpaid leave, Golden Gate placed Mr. Linder on a repetitive and wholly idiosyncratic Friday-Monday evening schedule that had never been previously assigned to anyone else.  Additionally, Captain Locati refused to reinstate all of his Bridge Lieutenant duties, in direct contravention of orders given from Golden Gate's upper management.

30.     During this time, Golden Gate relayed contacts from BSIS investigators to Mr. Linder, who continued to cooperate in the BSIS investigation.

31.     By October 2012, Captain Locati, in furtherance of her retaliatory scheduling, canceled the planned Bridge Lieutenant schedule rotation, thereby locking Mr. Linder into his unprecedented "all weekend only" schedule.

32.     In late October 2012, the unwarranted and excessive scrutiny of Mr. Linder commenced with a weapons incident that occurred, for which Captain Locati chose to blame Mr. Linder, even though he had acted correctly under the circumstances.

33.     In November 2012, Mr. Linder e-mailed Ms. Locati with a formal request to return all of his Bridge Lieutenant duties.  Ms. Locati never responded, nor did she return Mr. Linder to his full duties.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

34.     In December 2012, Mr. Linder reported to the District and BSIS a regulatory violation by Golden Gate concerning the use of Bullseye, a private third-party company that provides target range services.  Golden Gate subsequently became aware of Mr. Linder's report.

35.     In January 2013, Mr. Linder again formally requested full reinstatement of his Bridge Lieutenant duties, attaching his prior request from November 2012.

36.     In January 2013, Mr. Linder filed a grievance with Golden Gate's Human Resources department concerning Captain Locati's retaliatory conduct, including the following: requiring Mr. Linder to have a CDOJ permit or be arrested for trespassing; informing him he would be put on unpaid leave if he could not obtain the permit within fifty (50) hours; restricting him from putting his belongings anywhere but his own locker; refusing to reinstate his Bridge Lieutenant duties; e-mailing eight (8) Sergeants that she was ashamed and embarrassed by Mr. Linder's return to duty and that he had done "illegal things," including lying and falsifying permits; placing him on his idiosyncratic "all weekend only" schedule and canceling the planned Bridge Lieutenant rotation schedule; restricting his access to certain areas (e.g., the ammunition locker, gun safes, and Bridge Lieutenants' office) where even Sergeants were permitted; and making threats of a *Brady* motion.

37.     On March 7, 2013, for the first time in 21 years of service to Golden Gate, Mr. Linder was threatened with a *Brady* hearing in *People v. Masoud*.

38.     On March 9, 2013, Mr. Linder responded to a car accident near the Golden Gate Bridge, after which Captain Locati falsely accused him of wrongdoing based on allegations from a California Highway Patrol ("CHP") Officer.

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

39.     On March 20, 2013, Mr. Linder asked Human Resources, through Ms. Spencer, to investigate the validity of the CHP claims against him, but Human Resources refused and rejected his grievance on May 20, 2013.

40.     In June 2013, Mr. Linder was placed on a "Final Written Warning" based on three incidents, none of which had any merit, and for which other Golden Gate personnel have not been disciplined.

41.     In September 2013, Mr. Linder received additional threats of termination concerning alleged damage to vehicles with ergonomic accommodations his size and condition required.

42.     In October 2013, Mr. Linder again engaged in protected activity by sending an e-mail to Captain Locati concerning the lack of proper security around the Golden Gate Bridge's anchorages, which provide absolutely critical structural support to one of the world's largest suspension bridges.  Despite the substantial sums of money the Department of Homeland Security invested in such critical infrastructure, the Golden Gate permitted an absolute failure of security before and after construction.  Mr. Linder reported these safety, security, and protocol violations to Captain Locati, who only further retaliated against him, despite his attempt to ensure Golden Gate's compliance and the public safety.

43.     In December 2013, Locati ordered Mr. Linder to a "fitness for duty" examination, which did not address the stated concern for placing Mr. Linder on administrative leave, resulting from comments made to Captain Locati.

44.     In late December 2013, Mr. Linder was subjected to a *Brady* hearing.

45.     Also in late December 2013, even though he was cleared to return to duty, Mr. Linder was kept on administrative leave until his termination hearing concluded.

46.     On or around December 30, 2013, Captain Locati initiated an Intent to Terminate

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

memorandum for Mr. Linder, citing the following as alleged grounds for his termination: (1) Captain Locati's removal of him from the weapons oversight program; (2) Mr. Linder's alleged allowance of BSIS and CDOJ permits to expire and failure to schedule prompt training; (3) his alleged failure to maintain logs; (4) his 60-day suspension on September 17, 2012; (5) his Final Written Warning on June 16, 2013 for allegedly failing to manage the following: a February 18, 2013 suicide incident on the Golden Gate Bridge, the March 9, 2013 CHP accident incident, a March 10, 2013 incident with a jogger trespassing on the Golden Gate Bridge, and an October 6, 2013 incident with a trespasser on the Golden Gate Bridge's tower; and (6) his alleged failure to disclose his prescribed medication, even though Golden Gate had been advised that he had not taken medication within twenty-four (24) hours of any work period.

47.     On February 19, 2014, Golden Gate terminated Mr. Linder's employment, citing the following: (1) a November/December 2013 incident with a individual who attempted to climb the cable of the Golden Gate Bridge ; (2) the July 2013 Written of Warning regarding an allegedly anonymous complaint from the CHP as to Mr. Linder's response to a car accident; (3) Mr. Linder's response to a possible suicide; and (4) Mr. Linder's allegedly aggressive behavior towards a jogger trespassing on the Golden Gate Bridge.


**FIRST CLAIM**
**RETALIATION IN VIOLATION OF CAL. LAB. CODE § 1102.5(b)**
**(Alleged Against Defendant District)**

48.     As a first, separate and distinct claim, Plaintiff complains of Defendant Golden Gate, and for a claim, alleges:

49.     The factual allegations of Paragraphs 1 through 47, above, are re-alleged and incorporated herein by reference.

10

50.     Section 1102.5 of the Labor Code of the State of California provides that an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

51.     From September 13, 1991 until February 19, 2014, Plaintiff was employed by Defendant Golden Gate.

52.     From at least 2009 until February 19, 2014, Captain Locati and DOES 1-10 acted, in various capacities, as duly appointed agents, representatives, and actors on behalf of Golden Gate under color of state law.

53.     In 2012, Plaintiff truthfully testified as to his reasonably belief of weapons permitting and licensing improrieties at Golden Gate, including renewals, re-qualifications, and non-compliance with applicable regulations.

54.     Thereafter, the BSIS found that Defendant had acted unlawfully and accordingly stripped Golden Gate to certify its own compliance with applicable regulations.

55.     Plaintiff contacted Human Resources to grieve the retaliatory conduct by Defendant Golden Gate, through Captain Locati, but Human Resources rejected his grievance without a proper investigation which would comply with prevailing standards for human resources investigations.

56.     Following Plaintiff's truthful testimony, he was subjected to a pattern of adverse employment actions, including schedule changes, discipline, unpaid leave, and termination.

57.     Plaintiff's disclosures were protected under the provisions of Cal. Lab. Code § 1102.5.

58.     In so doing the acts and engaging in the activities alleged herein, Defendant Golden Gate, through its agents, Captain Locati, did intend to retaliate against Plaintiff for his exercise of rights protected under California Labor Code § 1102.5 and cause Plaintiff to suffer severe emotional distress.

59.     As a direct and proximate result of this willful, knowing, and intentional retaliation by Defendant, Plaintiff has suffered and continues to suffer the loss of earnings and related employment benefits, mental distress, anguish, and indignation.  Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

60.     Plaintiff filed a complaint with the California Labor Commissioner (Case No. 35840-SACRCI), and thus has exhausted all administrative remedies.

## SECOND CLAIM
## RETALIATION IN VIOLATION OF CONSTITUTIONAL RIGHTS
## (FIRST AMENDMENT
## (42 U.S.C. § 1983)
## (Alleged Against All Defendants)

61.     As a second, separate and distinct claim, Plaintiff complains of Defendants, and each of them, and for a claim, alleges:

62.     The factual allegations of Paragraphs 1 through 60, above, are re-alleged and incorporated herein by reference.

63.     Absent the protected speech and even the prospect of Plaintiff engaging in such protected speech, Defendant and its officials would not have taken such actions.

64.     The various acts of intimidation, reprisal, retaliation, suppression and/or restraint exercised by Defendants against Plaintiff created a chilling effect on his legitimate public, political, and social speech by creating fear, hesitation, hostility and other destructive responses.

65.     Plaintiff gave testimony and information to BSIS and CDOJ investigators regarding

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

weapons permitting and licensing improprieties at Golden Gate, which is a matter of public concern concerning public integrity and public safety. The content of Mr. Linder's testimony regarding, *inter alia*, improperly procured certifications obviously involves a matter of significant public concern.

66.     Though Plaintiff was a public employee, his speech was made as a private citizen because he had no official duty to report mismanagement and wrongdoing within Golden Gate, nor was his speech part of the tasks he was paid to perform.

67.     Defendant was aware of Plaintiff's speech, as Captain Locati informed Plaintiff that he would be questioned by Ms. Wallace as part of the District's internal response to the BSIS and CDOJ investigations, and Ms. Witt knew of Plaintiff's discussions with BSIS and CDOJ investigators.

68.     In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression. Specifically, Defendant has taken the aforementioned actions against Plaintiff in direct retaliation for, and in response to, the various protected activities of Plaintiff and the prospect of Plaintiff engaging in such activities.   The actions and omissions of Defendants, and each of them, were done by Defendant under color of state law in its capacity as a Special District chartered under state law, and through policy making authorities to which Defendant District delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

69.     The acts and omissions described above were taken by Defendant District's official policy makers as members charged with such responsibility.  It was or should have been obvious to any reasonable individual or policy making official of Defendant District that the acts and omissions

of Defendants as alleged herein, taken singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights.  In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights.  General, special, and exemplary damages are sought according to proof.

70.    Plaintiff has no plain, speedy nor adequate remedy at law to prevent future violations of his civil rights, and therefore seeks extraordinary relief in the form of permanent injunctions, as hereafter described.  Damages alone are inadequate and injunctive relief is sought to command Defendants to reinstate Plaintiff, in order to place him in a position he would have been in, absent the unlawful conduct of Defendants.

71.    Defendants' adverse employment actions against Plaintiff, including locking him into an "all weekend only" schedule, were reasonably likely to deter her from engaging in constitutionally protected speech.

72.    Plaintiff had a constitutionally protected fundamental property right in continued employment defined by state law, which California recognizes as all types of public employees.

73.    Plaintiff's protected speech was a substantial or motivating factor in the adverse employment actions taken by Defendant due to the proximity in time between his expressive conduct and the retaliatory actions.

74.     Defendant lacked an adequate justification for treating Plaintiff differently from other members of the general public.

75.    Defendants would not have taken the adverse employment actions absent Plaintiff's protected speech.

76.     In so doing the acts and engaging in the activities alleged herein, Defendants did intend to retaliate against Plaintiff for his exercise of First Amendment rights pursuant to 42 U.S.C. §1983 and cause Plaintiff to suffer severe emotional distress.

77.     As a direct and proximate result of this willful, knowing, and intentional retaliation by Defendants, Plaintiff has suffered and continues to suffer the loss of earnings and related employment benefits, mental distress, anguish, and indignation. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

78.     Defendant has committed the abusive acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intent of injuring Plaintiff and from an improper and evil motive, amounting to malice, and in conscious disregard for Plaintiff's rights as an employee.


**THIRD CLAIM**
**VIOLATION OF CONSTITUTIONAL RIGHTS**
**FIFTH AND FOURTEENTH AMENDMENTS**
**(42 U.S.C. § 1983)**
**(Alleged Against All Defendants)**

79.     As a third, separate and distinct claim, Plaintiff complains of Defendants and each of them, and for a claim, alleges:

80.     The factual allegations of Paragraphs 1 through 78, above, are re-alleged and incorporated herein by reference.  By virtue of the conduct set forth above, Defendants subjected Plaintiff to deprivation of substantive due process rights secured by the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983. Defendants' conduct constituted retaliatory, arbitrary and capricious action, carried out under color of state law.

81.     Termination of plaintiff's employment constituted deprivation of Plaintiff's property interest, and was therefore a violation of substantive due process under the Fifth Amendment as incorporated by the Fourteenth Amendment of the U.S. Constitution.

82.     As a direct and proximate result of the violation of the Plaintiff's civil rights by Defendant, Plaintiff sustained economic damage for past and perspective loss of earnings and benefits according to proof.

83.     As a further direct and proximate result of the said violation of Plaintiff's civil rights, Plaintiff sustained general damages for severe mental and emotional distress and injury to Plaintiff's reputation as set forth below.

84.     Plaintiff is further entitled to an award of statutory attorney's fees in bringing in this action pursuant to 42 U.S.C. § 1983.


**FOURTH CLAIM**
**VIOLATION OF THE BANE ACT**
**(Cal. Civ. Code, § 52.1)**
**(Alleged Against All Defendants)**

85.     As a fourth, separate and distinct claim, Plaintiff complains of Defendants, and each of them, and for a claim, alleges:

86.     The factual allegations of Paragraphs 1 through 84, above, are re-alleged and incorporated herein by reference.

87.     Cal. Civ. Code § 52.1 provides that any individual may initiate civil action for, *inter alia*, damages and injunctive relief if a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by the individual of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

this state.

88. Plaintiff exercised his constitutional rights to free speech by disclosing the unlawful conduct of the District in the BSIS and CDOJ investigation, which led to the revocation of the District's Rangemasters and Training Facility permits. Therefore, Plaintiff is protected by Cal. Civ. Code § 52.1 from interference or attempted interference of the exercise of those constitutional rights.

89. Defendants interfered and/or attempted to interfere with Plaintiff's constitutional and statutory rights, including but not limited to, the right to be free from unlawful retaliation and the right to exercise his free speech without being targeted for retaliation by a party threatening or committing violent acts against him or his property interests.

90. Plaintiff reasonably believed that if he exercised his right to free speech and disclosed the Defendants' unlawful tactics and procedures used for assault weapons qualification and certification, sidearm qualification and certification, and the operation of the District's range, Defendants would commit violence against him and/or his property interests in order to prevent him from exercising his rights as aforementioned or retaliate against him for having exercised said rights.

91. As described above, Defendants interfered with Mr. Linder's property interest in public employment in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution, as well as the right a workplace free of retaliation (Cal. Gov. Code, § 12653; Cal. Lab. Code § 1102.5(b)), by threatening, *inter alia*, a *Brady* motion against him, threatening to have him arrested for trespassing if he returned to the work premises, and the other adverse actions set forth above.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

92.     Plaintiff reasonably believed that if he exercised his above-described rights under federal and California law, Defendants would retaliate against him by, *inter alia*, terminating his employment.

93.     Defendants injured Plaintiff to retaliate against him for having exercised the above-described rights under federal and California law.

94.     Defendant Golden Gate's conduct was a substantial factor in causing Plaintiff's harm.

95.     As a direct and proximate result of the violation of the Plaintiff's civil rights by Defendant, Plaintiff sustained economic damage for past and perspective loss of earnings and benefits according to proof.

96.     As a further direct and proximate result of the said violation of Plaintiff's civil rights, Plaintiff sustained general damages for severe mental and emotional distress and injury to Plaintiff's reputation as set forth below.

97.     Plaintiff is further entitled to an award of statutory attorney's fees in bringing in this action pursuant to Cal. Civ. Code § 52.1.


**FIFTH CLAIM**
**INTENTIONAL INFICTION OF EMOTIONAL DISTRESS**
**(Alleged Against All Defendants)**

98.     As a fifth, separate and distinct claim, Plaintiff complains of Defendants, and each of them, jointly and severally, and for a cause of action, alleges:

99.     The factual allegations of paragraphs 1 through 97 above are re-alleged and incorporated herein by reference inclusive, as though set forth here in full.

100.    Defendants intentionally and with malicious motive and bad faith, engaged in the aforementioned conduct which was calculated to cause and did cause Plaintiff to suffer severe psychological harm, humiliation and anxiety, particularly since Defendants intentionally caused

the actions and conduct against Plaintiff as herein described.

101.    At all times herein, Defendants occupied positions of power and authority over Plaintiff; whereby, any statement made by or actions taken by Defendants would have an impact far above and beyond the acts and statements of a peer of Plaintiff or a stranger to the employment relationship.

102.    Defendants did not simply exercise managerial discretion in an ordinary employment action by issuing a notice of termination of employment.

103.    Defendants' conduct has been done with the knowledge that it would cause Plaintiff severe psychological harm and was done with a wanton and reckless disregard of the consequences to the Plaintiff and with evil design and a malignant heart.

104.    Defendants' conduct was extreme, outrageous and unlawful.

105.    As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and continues to suffer severe psychological harm.

106.    At all material times mentioned herein, Defendants knew that the Plaintiff depended upon freedom from demeaning, disrespectful, and humiliating treatment, and the undermining of his ability to perform his assigned and related duties. Plaintiff further relied upon a satisfactory work record, fairness in other aspects of his employment relationship for his livelihood and support of his family.

107.    As result of said actions and conduct of Defendants, Plaintiff has suffered damages for loss of earnings, loss of future earnings, and related employment benefits and opportunities.

108.    The foregoing conduct of Defendants was intentional, willful, wrongful, malicious and done in bad faith, and Plaintiff is entitled to punitive damages against the individual Defendants in an amount commensurate with said wrong doing and their financial ability.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For a mandatory injunction requiring Plaintiff to be returned to his position without reservation, and to have his official record corrected and all service credit restored, and prohibiting retaliatory conduct by Defendants in the future;

2. For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

3. For economic damages including back pay, front pay,  loss of earning capacity, and other pecuniary damage in amounts according to proof;

4. For punitive damages in an amount sufficient to punish individual Defendants and deter future unlawful conduct;

5. For attorneys' fees as provided by law;

6. For interest as provided by law;

7. For costs of suit herein; and

8. For such other and further relief as the Court deems fair and just.


Dated: August 25, 2014                              SMITH PATTEN


                              By:  /s/  Dow W. Patten
                                   SPENCER F. SMITH
                                   DOW W. PATTEN
                                   Attorneys For Plaintiff
                                   PAUL LINDER

20

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **JURY DEMAND**

Plaintiff hereby demands trial by jury of all matters so triable.


Dated: August 25, 2014                              SMITH PATTEN


                                          By:   */s/  Dow W. Patten*
                                          SPENCER F. SMITH
                                          DOW W. PATTEN
                                          Attorneys For Plaintiff
                                          PAUL LINDER

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF